# Exhibit A

*Receipt : 19000021162*

Page 1 of 1



**OFFICIAL RECEIPT**
**ALEXANDRIA CIRCUIT COURT**
**CIVIL**

**DATE :** 07/02/2019                **TIME :** 11:51:14
**RECEIPT # :** 19000021162    **TRANSACTION # :** 19070200069
**CASHIER :** MEC                **REGISTER # :** A707
**CASE COMMENTS :** HANOVER INSURANCE v. LAURENCE BANK

**SUIT AMOUNT :** $0.00
**ACCOUNT OF :** HANOVER INSURANCE
**PAID BY :** HANOVER INSURANCE
**CHECK :** $86.00        **CHECK NUMBER :** 108177

**DESCRIPTION 1 :** COM:COMPLAINT - CATCH-ALL
                2 : PLAINTIFF: HANOVER INSURANCE
                3 : NO HEARING SCHEDULED

**CASE # :** 510CL1900240200

**FILING TYPE :** COM        **PAYMENT :** FULL PAYMENT

| ACCOUNT CODE | DESCRIPTION | PAID |
|---|---|---|
| 049 | WRIT TAX (CIVIL) | $5.00 |
| 106 | (TTF) TECHNOLOGY TRUST FUND FEE (CIRCUIT COURT) | $5.00 |
| 123 | LEGAL AID SERVICES | $9.00 |
| 147 | INDIGENT ASSISTANCE (INA) | $1.00 |
| 170 | COURT TECHNOLOGY FUND | $10.00 |

| ACCOUNT CODE | DESCRIPTION | PAID |
|---|---|---|
| 219 | LAW LIBRARY | $4.00 |
| 229 | COURTHOUSE MAINTENANCE FEE (CHMF) | $2.00 |
| 304 | CIVIL FILING FEE (LAW & EQUITY) | $50.00 |

**TENDERED : $**        86.00
**AMOUNT PAID : $**        86.00

**CLERK OF COURT :** EDWARD SEMONIAN

PAYOR'S COPY                RECEIPT COPY 1 OF 2



# Sinnott Nuckols & Logan, PC

*ATTORNEYS AT LAW*

(804) 893-3861- Direct Dial                                                                        khardt@snllaw.com

June 24, 2019

Hon. Edward Semonian, Jr., Clerk
Alexandria Circuit Court
520 King Street
Alexandria, VA 22314

> **Re:**   **Hanover Insurance Company v. Laurence Bank, et al.**
>              **Civil Case No.:**   _CL19002402_

Dear Mr. Semonian:

Enclosed herewith please find an original and four copies of a *Complaint* with which I would like to initiate the above-referenced matter. Please file the original, prepare one copy for service on Laurence Bank via private process server, prepare another copy for service on NK Washington St. LLC, and The Charter Oak Fire Insurance Company via private process server, and stamp the final copy as "filed" and return it to me in the enclosed envelope. I have also enclosed my firm's check in the amount of $110.00, representing the filing fee. Kindly send me a receipt in the enclosed envelope.

If you have any questions, please call my office. Thanking you, I am

Sincerely,

Kenneth F. Hardt

KFH/adb
Enclosures
cc: John H. Johnson, AIC (via email only)
(19-00330006)

# Sinnott Nuckols & Logan, PC

*A T T O R N E Y S   A T   L A W*

(804) 893-3861- Direct Dial

khardt@snllaw.com

June 24, 2019

Hon. Edward Semonian, Jr., Clerk
Alexandria Circuit Court
520 King Street
Alexandria, VA 22314

Re:  **Hanover Insurance Company v. Laurence Bank, et al.**
      **Civil Case No.:**   *CL19002402*

Dear Mr. Semonian:

Enclosed herewith please find an original and four copies of a *Complaint* with which I would like to initiate the above-referenced matter.  Please file the original, prepare one copy for service on Laurence Bank via private process server, prepare another copy for service on NK Washington St. LLC, and The Charter Oak Fire Insurance Company via private process server, and stamp the final copy as "filed" and return it to me in the enclosed envelope.  I have also enclosed my firm's check in the amount of $110.00, representing the filing fee.  Kindly send me a receipt in the enclosed envelope.

If you have any questions, please call my office.  Thanking you, I am

Sincerely,

Kenneth F. Hardt

KFH/adb
Enclosures
cc: John H. Johnson, AIC (via email only)
(19-00330006)

## COVER SHEET FOR FILING CIVIL ACTIONS
COMMONWEALTH OF VIRGINIA

Case No. _CL19002402_
(CLERK'S OFFICE USE ONLY)

......... City of Alexandria ......... Circuit Court

Hanover Insurance Company          v./In re:      Laurence Bank and NK Washington St. LLC
PLAINTIFF(S)                                        DEFENDANT(S)
                                                    BG Arlington, LLC and The Charter Oak Fire Ins. Co.

I, the undersigned [ ] plaintiff [ ] defendant [ ] attorney for [ ] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

**GENERAL CIVIL**
**Subsequent Actions**
[ ] Claim Impleading Third Party Defendant
  [ ] Monetary Damages
  [ ] No Monetary Damages
[ ] Counterclaim
  [ ] Monetary Damages
  [ ] No Monetary Damages
[ ] Cross Claim
[ ] Interpleader
[ ] Reinstatement (other than divorce or driving privileges)
[ ] Removal of Case to Federal Court
**Business & Contract**
[ ] Attachment
[ ] Confessed Judgment
[ ] Contract Action
[ ] Contract Specific Performance
[ ] Detinue
[ ] Garnishment
**Property**
[ ] Annexation
[ ] Condemnation
[ ] Ejectment
[ ] Encumber/Sell Real Estate
[ ] Enforce Vendor's Lien
[ ] Escheatment
[ ] Establish Boundaries
[ ] Landlord/Tenant
  [ ] Unlawful Detainer
[ ] Mechanics Lien
[ ] Partition
[ ] Quiet Title
[ ] Termination of Mineral Rights
**Tort**
[ ] Asbestos Litigation
[ ] Compromise Settlement
[ ] Intentional Tort
[ ] Medical Malpractice
[ ] Motor Vehicle Tort
[ ] Product Liability
[ ] Wrongful Death
[ ] Other General Tort Liability

**ADMINISTRATIVE LAW**
[ ] Appeal/Judicial Review of Decision of (select one)
  [ ] ABC Board
  [ ] Board of Zoning
  [ ] Compensation Board
  [ ] DMV License Suspension
  [ ] Employee Grievance Decision
  [ ] Employment Commission
  [ ] Local Government
  [ ] Marine Resources Commission
  [ ] School Board
  [ ] Voter Registration
  [ ] Other Administrative Appeal

**DOMESTIC/FAMILY**
[ ] Adoption
  [ ] Adoption – Foreign
[ ] Adult Protection
[ ] Annulment
  [ ] Annulment – Counterclaim/Responsive Pleading
[ ] Child Abuse and Neglect – Unfounded Complaint
[ ] Civil Contempt
[ ] Divorce (select one)
  [ ] Complaint – Contested*
  [ ] Complaint – Uncontested*
  [ ] Counterclaim/Responsive Pleading
  [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
[ ] Separate Maintenance
  [ ] Separate Maintenance Counterclaim

**WRITS**
[ ] Certiorari
[ ] Habeas Corpus
[ ] Mandamus
[ ] Prohibition
[ ] Quo Warranto

**PROBATE/WILLS AND TRUSTS**
[ ] Accounting
[ ] Aid and Guidance
[ ] Appointment (select one)
  [ ] Guardian/Conservator
  [ ] Standby Guardian/Conservator
  [ ] Custodian/Successor Custodian (UTM
[ ] Trust (select one)
  [ ] Impress/Declare/Create
  [ ] Reformation
[ ] Will (select one)
  [ ] Construe
  [ ] Contested

**MISCELLANEOUS**
[ ] Amend Death Certificate
[ ] Appointment (select one)
  [ ] Church Trustee
  [ ] Conservator of Peace
  [ ] Marriage Celebrant
[ ] Approval of Transfer of Structured Settlement
[ ] Bond Forfeiture Appeal
[x] Declaratory Judgment
[ ] Declare Death
[ ] Driving Privileges (select one)
  [ ] Reinstatement pursuant to § 46.2-427
  [ ] Restoration – Habitual Offender or 3rd Offense
[ ] Expungement
[ ] Firearms Rights – Restoration
[ ] Forfeiture of Property or Money
[ ] Freedom of Information
[ ] Injunction
[ ] Interdiction
[ ] Interrogatory
[ ] Judgment Lien-Bill to Enforce
[ ] Law Enforcement/Public Official Petition
[ ] Name Change
[ ] Referendum Elections
[ ] Sever Order
[ ] Taxes (select one)
  [ ] Correct Erroneous State/Local
  [ ] Delinquent
[ ] Vehicle Confiscation
[ ] Voting Rights – Restoration
[ ] Other (please specify)

[ ] Damages in the amount of $ .................................................... are claimed.

06/24/2019
DATE

[ ] PLAINTIFF   [ ] DEFENDANT   [x] ATTORNEY FOR   [x] PLAINTIFF
                                                          [ ] DEFENDANT

Kenneth F. Hardt, Esq.
PRINT NAME

Sinnott, Nuckols & Logan, PC,  (804) 893-3861
ADDRESS/TELEPHONE NUMBER OF SIGNATOR

13811 Village Mill Drive, Midlothian, VA 23114

khardt@snllaw.com
EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

FORM CC-1416 (MASTER) PAGE ONE 07/16

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF ALEXANDRIA

HANOVER INSURANCE COMPANY,

                    Plaintiff,

                Case No. *CL19002402*

    v.

LAURENCE BANK,

       Serve:  (Via mail and in person)
              1899 Pennsylvania Ave NW
              Washington, DC 20006

NK WASHINGTON ST, LLC,

       Serve:  Roy R. Morris
              Registered Agent
              3847 N Tazewell St.
              Arlington, VA 22207

BG ARLINGTON, LLC (Purged entity),

THE CHARTER OAK FIRE INSURANCE COMPANY,

       Serve:  Corporation Service Company
              Registered Agent
              100 Shockoe Slip, Fl 2
              Richmond, VA 23219

                    Defendants.

FILED
2019 JUN 26 PH 3: 15
CLERK OF COURTS
CITY OF ALEXANDRIA

## **COMPLAINT FOR DECLARATORY JUDGMENT**

      HANOVER INSURANCE COMPANY ("Hanover"), by counsel sets forth the following

as its Complaint seeking Declaratory Judgment against Laurence Bank, NK Washington ST, LLC,

BG Arlington LLC (purged entity) and The Charter Oak Fire Insurance Company ("Charter Oak").

1

## **INTRODUCTION**

1.      This is an action for declaratory relief and Hanover asks this Court to adjudicate and determine the rights of the parties to a policy of insurance which are in dispute. See Va. Code § 8.01-184.

2.      Venue is proper in this Court as this cause arises out of a policies of insurance that may have been issued by Hanover purportedly covering property located within this venue.

3.      Hanover is a corporation organized and existing under the laws of the New Hampshire with its principal place of business in Massachusetts.

4.      Upon information and belief, Laurence Bank is an individual residing in Washington, D.C.  Although Laurence Bank is listed as a named insured under the relevant insurance policy, he does not appear to own the purportedly insured building located at 424 N. Washington Street, Alexandria Virginia.  (the "Property")

5.      Upon information and belief, NK Washington St., LLC was a limited liability company with a registered agent in Arlington, Virginia and its status with the State Corporation Commission is currently listed as "Cancelled".  NK Washington St., LLC is listed as the owner of the Property with the Alexandria City tax records.

6.      Upon information and belief, BG Arlington, LLC (purged entity) was a limited liability company that apparently ceased in existence a number of years ago.  Although it is listed as a named insured under the relevant insurance policy, it does not appear to have any ownership interest in the Property.

7.      Laurence Bank, NK Washington St., LLC and BG Arlington LLC are referred to below as "Potential Insureds".

2

8.      Charter Oak is Connecticut Corporation authorized to do business in the

Commonwealth of Virginia, is an insurer and is named in this action as it may have an interest in

the coverage issues addressed herein.

## **FACTUAL ALLEGATIONS**

9.      On May 21, 2018, Insureon Brokerage, an insurance broker or agent, proposed

that the Potential Insureds change their insurance covering their Property from Charter Oak

(referred to as "Travelers") to Hanover.  (Exhibit A).

10.      In that letter, the Proposed Insureds were instructed:

A new, competitively-priced policy from Hanover will arrive in advance of your
current policy expiration date. With this letter you will find two documents
enclosed: (1) a proposal for your Hanover policy and (2) a cancellation form for
your current policy. Simply sign and return the enclosed cancellation form to
accept the Hanover policy and to ensure there's no lapse in your coverage
(thereafter, you can ignore any renewal bills you may get from your current
insurance company). You can also fax the signed form to 800-799-6377 or email
it to CLCSC@hanover.com.

11.      A proposed Business Owners policy was prepared by Hanover covering both

property and liability, Policy Number OHC-D597279-00 (the "Policy").  The effective dates of

the proposed Policy were September 24, 2018 through September 24, 2019, and the proposed

insured property as amended was the Property.  (Exhibits B and C).

12.      On August 3, 2018, the Charter Oak policy covering the Property was renewed

for the period September 24, 2018 – September 24, 2019.

13.      The Proposed Insureds never returned the cancellation form to Hanover as

instructed and no premium payment was made; therefore, Hanover on September 17, 2018

internally noted the proposed Policy as cancelled at the request of the proposed insured.

3

14.     A notice of cancellation of the Charter Oak' policy was sent to the Proposed

Insureds on October 4, 2018, with an effective date of November 13, 2018.

15.     On October 9, 2018, Hanover received a premium check in the amount of $8,880

apparently from the Proposed Insureds.  A rebate check for this payment was sent by Hanover to

the Proposed Insureds.

16.     According to the Proposed Insureds or their agents, on October 21 or 22, 2018, a

property manager for the Proposed Insureds discovered damage to the Property allegedly caused

by the remnants of Hurricane Michael.

17.     According to the Proposed Insureds or their agents, KEM Environmental

Solutions, LLC visited the Property at the request of the Proposed Insureds or their agents on

October 25, 2018.

18.     On November 1, 2018, an agent of the Proposed Insureds contacted Hanover to

inquire about the Policy.  The agent was told at that time that Hanover had not received the

notice of cancellation form as instructed by the Proposed Insureds.  The agent of the Proposed

Insureds during that call sent the notice of cancellation form to Hanover via electronic mail and

asked if there was coverage under the Hanover Policy.

19.     During that November 1, 2018 telephone call, Hanover informed the agent of the

Proposed Insureds that if the Policy was going to be reinstated retroactively to September 24,

2018, the Proposed Insureds had to confirm that there had been no damage, claims or losses from

the period September 24, 2018 to November 1, 2018.  The agent affirmatively represented that

there had been no such damage, claims or losses during that time frame.

20.     Also during that November 1, 2018 call, the agent was informed and confirmed

that Hanover would not be liable for any damage, losses or claims occurring during the period

September 24, 2018 to November 1, 2018, as the Policy was going to be reinstated retroactive to September 24, 2018, based upon reliance on the representation of the agent of the Proposed Insureds.

21. On November 6, 2018, Blair Roofing, Inc. at the request of the Proposed Insureds or their agents visited the Property.

22. On November 7, 2018, an agent of the Proposed Insureds called Hanover to again ask if the policy was in effect. There was no mention by the agent of any loss allegedly occurring in October. At that time, a reinstatement notice was sent to the Proposed Insureds. A stop-payment was or had been made for the refund check and the amount was applied to the Policy.

23. On November 11, 2018, the Proposed Insureds or their agents first notified Hanover of an alleged loss occurring on October 11 and 12, 2018 allegedly from the remnants of Hurricane Michael.

24. On November 13, 2018, the Charter Oak' policy was cancelled.

25. Hanover issued its reservation of rights letter to the Proposed Insureds or their agents on January 25, 2019.

26. Since that time, the Proposed Insureds or their agents have refused to reasonably cooperate with Hanover in its investigation of the alleged loss and has refused to make available its books and records to Hanover as part of Hanover's investigation.

27. The Proposed Insureds or their agents submitted a Proof of Loss for the alleged damage to the Property, which included claims of not only wind/water damage associated with the remnants of Hurricane Michael, but also associated with a failed sump pump in the basement, which had not been previously reported to Hanover by the Proposed Insureds or their agents.

5

There was no apportionment of the damages between the two alleged occurrences and there was insufficient information provided to consider the Proof of Loss for a variety of reasons.

28.     Hanover rejected the Proof of Loss for a variety of reasons and filed this action for a Declaration of Rights relating to the Policy and the losses.

## COUNT I

29.     The above paragraphs are incorporated herein by reference.

30.     In order to enter into the contract of insurance represented by the Policy, the Proposed Insureds were required to return to Hanover the notice of cancellation of the existing Charter Oak Insurance Policy.

31.     The Proposed Insureds did not do so as instructed until the telephone call of November 1, 2018.

32.     Accordingly, there was no contract of insurance represented by the Policy during the time frame of the alleged loss in October, 2018.

WHEREFORE, Hanover asks the Court to declare that there was no Policy from Hanover during the time of the alleged loss, and therefore, there was no coverage under the Policy for the alleged loss.

## COUNT II

33.     The above paragraphs are incorporated herein by reference.

34.     During the November 1, 2018 telephone call with Hanover, the Proposed Insureds or their agent affirmatively misrepresented that there was no damage, losses or claims during the period September 24, 2018 through November 1, 2018, which misrepresentation was material.

6

35.     The Proposed Insureds or their agent knew or should have known that there had been an alleged loss in October, 2018.

36.     During that November 1, 2018 telephone call, the Proposed Insureds or their agent agreed that if there was any damage, losses or claims occurring between September 24, 2018 and November 1, 2018, there would be no coverage by Hanover for that damage, losses or claims.

37.     Based upon the fraud and/or misrepresentation of the Proposed Insureds or their agent, upon which Hanover relied, Hanover's reinstatement of the policy with the effective date of September 24, 2018 was void.

WHEREFORE, Hanover asks the Court to declare that there was no Policy from Hanover during the time of the alleged loss, and therefore, there was no coverage under the Policy for the alleged loss.

**COUNT III**

38.     The above paragraphs are incorporated herein by reference.

39.     To the extent there was coverage under the Policy for the Property during the relevant time period, the Policy provides as follows:

**BUSINESS OWNERS COVERAGE FORM**

    **SECTION I – PROPERTY**

    A.      **Coverage**

        We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations [note – subject property is identified in the Declarations] caused by or resulting from any Covered Cause of Loss.

….

        3.      **Covered Causes of Loss**

7

Risks of direct physical loss unless the loss is:

    **a.**    Excluded in **SECTION I – PROPERTY, B. Exclusions**; or

    **b.**    Limited in **SECTION I – PROPERTY, A. Coverages, 4. Limitations**

**4.**    **Limitations**

    **a.**    We will not pay for loss of or damage to:

….

    **(3)**    The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

        **(a)**    The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

        **(b)**    The loss or damage is caused by or results from thawing of the snow, sleet or ice on the building or structure.

….

**5.**    **Additional Coverages**

….

    **ff.**    **Limited Coverage for Fungi, Wet Rot, or Dry Rot.**

    **(1)**    The coverage described in paragraphs **(2)** and **(6)** below only applies when the "fungi", wet rot or dry rot is the result of any of the "specified causes of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

    **(2)**    We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

8

    (a)      Direct physical loss of or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

    (b)      The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

    (c)      The cost of testing performed after removal, repair, replacement or restoration of the damaged property is complete, provided there is a reason to believe that "fungi", wet rot or dry rot is present.

    (3)      The coverage described under this Limited Coverage is limited to $50,000. ...

....

**B.   EXCLUSIONS**

1.    We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

....

    **g.**    **Water**

....

    (3)      Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump, or related equipment;

....

    **j.**    **Neglect**

    Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

....

2.    We will not pay for loss or damage caused by or resulting from any of the following:

....

      q.    **Continuous or Repeated Seepage or Leakage of Water**

          Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

....

3.    We will not pay for loss or damage caused by or resulting from paragraphs **a, b.** and **c.** below.  But if an excluded cause of loss that is listed in paragraphs **a., b.** and **c.** below, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

....

      c.    **Negligent Work**

          Faulty, inadequate or defective:

....

        **(2)**    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        **(3)**    Materials used in repair, construction, renovation or remodeling; or

        **(4)**    Maintenance;

        of part or all of any property on or off the described premises.

**E.**    **Property Loss Conditions**

....

3.   **Duties in the Event of Loss or Damage**

a.   You must see that the following are done in the event of loss or damage to Covered Property:

….

(4)   Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim….

….

7.   **Vacancy**

a.   **Description of Terms**

(1)   As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in paragraphs **(a)** and **(b)** below:

….

(b)   When the policy is issued to the owner or general lessee of a building, building means the entire building.  Such building is vacant unless at least 31% of the total square footage is:

(i)   Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary obligations; and/or

(ii)   Used by the building owner to conduct customary operation.

b.   **Vacancy Provisions**

If the building or leased space where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1)   We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

….

11

          **(d)**     Water damage;

....

          **(2)**     With respect to Covered Causes of Loss other than those listed in paragraphs **(a), (b), (c), (d), (e) and (f)** above, we will reduce the amount we would otherwise pay the loss or damage by 15%.

....

**G.**    **Property Definitions**

....

    **27.**    "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by "fungi".

....

    **50.**    "Specified Causes of Loss" means the following:

        …water damage.

....

        **c.**    Water damage means

          **(1)**     Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

....

**SECTION III – COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I – PROPERTY AND SECTION II – LIABILITY)**

....

**C.**    **Concealment, Misrepresentation or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

1.      This policy;

2.      The Covered Property;

….

4.      A claim under this policy.

….

E.      **Property Loss Conditions**

….

**3. Duties in the Event of Loss or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

….

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase **SECTION I - PROPERTY, C. Limits of Insurance.** However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside

13

and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.
Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

....

**(8)** Cooperate with us in the investigation or settlement of the claim.

## AVENUES BUSINESSOWNERS DELUXE GOLD BROADENING ENDORSEMENT

....

### III.     COVERED PROPERTY

....

    **2.**    **Backup or Overflow of a Sewer, Drain or Sump**

The following is added to **SECTION I – PROPERTY, A. Coverage, 5. Additional Coverages:**

**Backup or Overflow of a Sewer, Drain or Sump**

**(1)**    We will pay for direct physical loss or damage to Covered Property at the described premises, solely caused by or resulting from water or waterborne material carried or moved by water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment....

....

14

> **(4)** **Special Sewer Backup Exclusion**
>
> We will not pay for:
>
> ….
>
> **(b)** Failure to keep a sump pump or its related equipment in proper working condition; …

40.     Under the Policy, there was no "Covered Cause of Loss" for the alleged damage to the Property.

41.     Under the Policy, the Proposed Insureds or their agents failed to use all reasonable means to save and preserve the Property; therefore, there is no coverage for any alleged damage to the Property relating to such neglect.

42.     The Property was vacant since December 31, 2017.  Therefore, under the Policy there is no coverage for water damage to the Property, or, to the extent there was coverage, it is reduced by 15%.

43.     Under the Policy, the limited "Fungi" coverage of $50,000 does not apply as there was no specified causes of loss and as the Proposed Insureds or their agents failed to use all reasonable means to prevent further damage to the Property.

44.     Under the Policy, there is no coverage for seepage or leakage of water and, therefore, there was no coverage for the alleged damage to the Property.

45.     Under the Policy, there is no coverage for any damages associated with a sump pump failure if due to a lack of maintenance.  As there was a lack of maintenance of the sump pump, there is no coverage for any damages to the Property associated with the sump pump failure.

15

46.     Under the Policy, the Proposed Insureds had a duty to provide reasonable notice of any loss, which they failed to do.

47.     Under the Policy, the Proposed Insureds had a duty to cooperate with Hanover after the loss, which they failed to do.

48.     Under the Policy, the Proposed Insureds had a duty to provide to Hanover books and records requested as part of its investigation, which they failed to do.

49.     Under the Policy, the Proposed Insureds had a duty to mitigate its damages at the time of and after any alleged loss and to use all reasonable means to do so, which they failed to do.

50.     Under the Policy, the Policy is void if there is any concealment, misrepresentation or fraud, which occurred.

WHEREFORE, Hanover respectfully pray for the following relief:

(a) That this Court declare that the Policy does not apply and is not available to the Proposed Insureds for any loss to the Property;

(b) That this Court award Hanover their costs expended herein; and

(c) That this Court grant Hanover such other relief as may be warranted, just, necessary or proper under the circumstances of this matter.

THE HANOVER INSURANCE
COMPANY

By: _____

Mark C. Nanavati, Esq. (VSB #38709)
Kenneth F. Hardt, Esq. (VSB #23966)
Sinnott Nuckols & Logan, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3866 (Nanavati)
(804) 893-3861 (Hardt)
(804) 378-2610 (Facsimile)
mnanavati@snllaw.com
khardt@snllaw.com

17

V I R G I N I A:

IN THE CIRCUIT COURT FOR THE CITY OF ALEXANDRIA

HANOVER INSURANCE COMPANY,

        Plaintiff,

                        Case No. _CL19002402_

   v.

LAURENCE BANK, et al.,

        Defendants.

_____

**HANOVER INSURANCE COMPANY'S FIRST SET
OF INTERROGATORIES AND REQUEST FOR
PRODUCTION OF DOCUMENTS TO
LAURENCE BANK, NK WASHINGTON ST., LLC
AND BG ARLINGTON, LLC**

     Hanover Insurance Company ("Hanover"), by counsel, submits the following as its first

set of interrogatories and request for production of documents to Laurence Bank ("Bank"), NK

Washington St., LLC ("NKW") and BG Arlington, LLC ("BGA") which should be answered in

accordance with the Rules of the Virginia Supreme Court:

**Definitions and Directions for Interrogatories and Request for Production**

     1.     In responding to these discovery requests, please provide all information within

your possession, custody or control, including without limitation, all information and documents

which are possessed by or available to your attorneys, accountants, agents, representatives and

all other persons acting or purporting to act for or on your behalf and who, upon your request,

would provide or would have an obligation to provide responsive information within their

possession, custody or control to you.

1

2.      In the event you produce documents in response to any request, such documents shall be produced in the precise manner in which they have been maintained in the ordinary course of your business or affairs or shall be organized to correspond to the categories of this request.

3.      If any interrogatory is answered by reference to a document or group of documents, with respect to each such answer identify (as defined above) the specific document or documents containing the requested information; in the case of multi-page documents, the subject matter, dates, and page numbers should be specified.

4.      If in response to any interrogatory you do not know all facts necessary to provide a complete and specific answer, you should provide an answer to such portion of the interrogatory as you can and provide such facts as are known to you and any estimates, approximations, or beliefs that you consider reliable.  Any such estimates, approximations or beliefs should be clearly denoted as such, and the basis for your belief in their reliability should be explained.

5.      As used herein, the terms "identify," "identity," or "identification" mean when used in reference to:

        a.      a natural person, his or her:

                (1)     full name; and

                (2)     present or last known home and address, including street name and number, city or town and state;

                (3)     present or last known position, job title and job description; and

                (4)     present or last known home and/or work telephone numbers and email adresses.

2

        b.     a company, corporation, association, partnership, joint venture or any legal entity other than a natural person, its:

           (1)     full name and type of organization or entity; and

           (2)     address of principal place of business.

        c.     a document:

           (1)     its date;

           (2)     its author(s);

           (3)     its addressee(s):

           (4)     a precise description of its contents; and

           (5)     the identity of the person(s) having possession of the document.

6.     As used herein, the terms "document" or "documents" mean all writings of any kind (including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise), including all electronic media, regardless of their origin or location, including, without limitation, correspondence, electronic mail, memoranda, notes, diaries, statistics, letters, text messages, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, interoffice and intra-office communications, notations of any sort of conversations, bulletins, printed matter, computer printouts, teletypes, telefax, and worksheets; and all drafts, alterations, modifications, changes and amendments of any of the foregoing; graphic or aural records of representations of any kind (including, without limitation, photographs, charts, graphs, microfiche, videotapes, recordings, and motion pictures); and electronic, mechanical or electric records or representations of any kind (including without limitation, tapes, cassettes, mag cards, discs and recordings).

7.     As used herein, the term "all documents" means every document as above defined known to you and every such document which can be located or discovered by reasonably diligent efforts.

8.     As used herein, the term "person" means any natural person, corporation, partnership, proprietorship, association, organization or group of natural persons.

9.     If a request is made for the identification of documents which are no longer in your possession or subject to your control, state what disposition was made of them and when.

10.     For each interrogatory, or part thereof, which you refuse to answer on the grounds of privilege (privilege as used herein shall include work product):

a.     state the nature of the privilege and the basis upon which the claim of privilege is made; and

b.     in addition, if the claim of privilege is asserted with regard to a document, state a precise description of the contents of the document.

11.     "And" shall include the word "or"; the word "or" shall include the word "and."

12.     The plural shall include the singular and the singular shall include the plural.

13.     These interrogatories and requests for production are continuing in character and are to be supplemented in accordance with Rule 4:1(e).

14.     The terms "you" and "your" includes your agent, employees, independent contractors and any person or entity acting on your behalf.

15.     The "Hanover Policy" refers to the proposed Policy Number OHC-D597279-00.

16.     The "Property" refers to 424 N. Washington Street, Alexandria Virginia.

17.     The "Charter Oak" policy refers to any insurance policy issued by The Charter Oak Fire Insurance Company covering the "Property".

4

18.     "Incidents" refers to the "windstorm damage to roof and/or building exterior and ensuing water infiltration; backup or overflow of sewer, drain, or sump" referenced in the Defendants' Sworn Statement in Proof of Loss, dated May 28, 2019.

## INTERROGATORIES

1.     Identify every person with knowledge or information concerning the facts and matters relating to the Property, the Hanover Policy, the Charter Oak Policy or the Incidents, including for each such person your belief in the substance of their knowledge.

**ANSWER:**

2.      Identify each and every written or verbal communication you had with any employee or agent of Hanover relating to the Property, the Hanover Policy, the Charter Oak Policy or the Incidents, and for each such communication identify the exact substance of the communication; the date and time or approximate date or time; and the purpose of the communication.

**ANSWER**:

3.      Identify each and every written or verbal communication you had with any employee or agent of The Charter Oak Fire Insurance Company relating to the Property, the Hanover Policy, the Charter Oak Policy or the Incidents, and for each such communication identify the exact substance of the communication; the date and time or approximate date or time; and the purpose of the communication.

**ANSWER:**

4.      Identify each and every written or verbal communication you had with any employee or agent of Insureon or "Insureon Brokerage" relating to the Property, the Hanover Policy, the Charter Oak Policy or the Incidents, and for each such communication identify the exact substance of the communication; the date and time or approximate date or time; and the purpose of the communication.

**ANSWER:**

5.      With respect to the roof of the Property, please identify the date it was installed, the dates all maintenance or repairs performed on the roof, the identity of the person or entity that installed, maintained or repaired the roof, and, if maintenance or repairs, the substance of the maintenance or repairs.

**ANSWER:**

6.      With respect to the sump pump at the Property, please identify the date it was installed, the dates all maintenance or repairs performed on the sump pump, the identity of the person or entity that installed, maintained or repaired the sump pump, and, if maintenance or repairs, the substance of the maintenance or repairs.

**ANSWER**:

7.     Identify each witness whom you may call at any hearing or trial in this matter and describe the substance of his or her anticipated testimony.

**ANSWER**:

8. State when you or your agents or employees first became aware of either of the Incidents, the identity of the person who first became aware of either of the Incidents, how that information was transmitted to you and your response, if any, to the information or with respect to either of the Incidents.

**ANSWER:**

9.      Identify each person whom you expect to call as an expert witness at trial, state the subject matter on which the expert is expected to testify, and state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

**ANSWER**:

13



EXHIBIT
A



30 N. LASALLE STREET SUITE 2500
CHICAGO ILLINOIS 60602-2514

May 21, 2018

Laurence Bank; NK Washington Street LLC; BG Arlington LLC
Attn:  Laurence Bank
424 N Washington St
Alexandria, VA  22314

Dear Laurence:

As part of our ongoing effort to serve you better, we recommend that your coverage be placed with Hanover*, a world-class insurer that has been in business since 1852.

A new, competitively-priced policy from Hanover will arrive in advance of your current policy expiration date. With this letter you will find two documents enclosed: (1) a proposal for your Hanover policy and (2) a cancellation form for your current policy. Simply sign and return the enclosed cancellation form to accept the Hanover policy and to ensure there's no lapse in your coverage (thereafter, you can ignore any renewal bills you may get from your current insurance company). You can also fax the signed form to 800-799-6377 or email it to CLCSC@hanover.com.

Responsive service is a key factor in our recommendation, and rest assured, Hanover's service is exceptional. In fact, their Customer Service Center, which acts as an extension of our agency, will be reaching out to review your renewal policy and assist with such services as policy changes, billing questions, certificates of insurance, coverage questions and general inquiries.

Please don't hesitate to call the Customer Service Center any time you have an issue or question regarding your policy.  Their professional representatives can be reached at the following numbers:

Customer Service Center Information:
Phone: **(888) 427-7380**
Fax: (800) 799-6377
Email: clcsc@hanover.com
Hours: Monday-Friday 7:00 a.m. to 9:00 p.m. EST
Hanover Claim Center (24 hours a day, 7 days a week)
Claims' Phone: (800) 628-0250

We are very excited to bring you Hanover's topnotch coverage and equally pleased to be partnering with Hanover's Customer Service Center to provide you with the high quality service and support you deserve.

Sincerely,

Brian Alban
VP of Insureon Brokerage
WTW Powered by Insureon

*Policies are underwritten by The Hanover Insurance Company or one of its property and casualty insurance company subsidiaries or affiliates ("The Hanover"). Coverage is subject to the underwriting company guidelines and the issued policy.